MATTER OF IREGBULEM

In Section 212(e) Proceedings

A-14658134

*Decided by Regional Commissioner December 1, 1971*

Applicant is denied a waiver of the foreign residence requirement of section 212(e) of the Immigration and Nationality Act for failure to establish, as claimed, that if she returned to Nigeria, the country of her nationality and last foreign residence, she would be subject to persecution because of her political activity in the United States on behalf of the Biafran cause during the recent civil war in that country, since a review of State Department reports and those of other independent sources, including the press, indicates there is no evidence of government persecution of former supporters of the Biafra regime.

ON BEHALF OF APPLICANT:    James N. Penrod, Esquire
556 Commercial Street
San Francisco, California 94111

This case comes before the Regional Commissioner on appeal from the decision of the District Director, San Francisco, who denied the application on September 20, 1971, in that the applicant had failed to establish that she would be subject to persecution within the meaning of section 212(e) of the Immigration and Nationality Act, as amended, if she returned to Nigeria, the country of her nationality and last foreign residence.

The applicant is a 29-year-old single female, a citizen of Nigeria, born in Port Harcourt (Biafra) of the Ibo tribe. She was admitted to the United States on August 9, 1964, as an exchange alien under section 101(a)(15)(J) of the Act sponsored by A.I.D. under exchange programs G–II–100 and P–I–577 for study and research towards advanced degrees. She studied at the University of Arizona in Tucson and Ohio State University achieving a Bachelor of Arts and Master's degree in nutrition and home economics.

Her last extension of stay expired March 1969. Since January 1970 she has been employed as a nutritionist at Mount Zion Hospital and Medical Center in San Francisco, California, where she

now lives. She is the beneficiary of an approved visa petition as a member of the professions as a nutritionist, but since her admission as an exchange alien under programs sponsored by A.I.D. was financed by a government agency, she is subject to the two-year foreign residence requirement of section 212(e) of the Act.

She desires to remain permanently in the United States and on June 22, 1971, filed an application for waiver of the two-year foreign residence requirement alleging that if she returned to Biafra, Nigeria, she would be subject to persecution because of her political activity in the United States in behalf of the Biafran cause during the recent civil war in Nigeria.

Section 212(e), in pertinent part, states that upon the favorable recommendation of the Secretary of State, pursuant to the request of the Commissioner of Immigration and Naturalization, after he has determined that the alien cannot return to the country of his nationality or last residence because he would be subject to persecution on account of race, religion, or political opinion, the Attorney General may waive the requirement of such two-year foreign residence abroad in the case of an alien whose admission to the United States is found by the Attorney General to be in the public interest.

She alleges that while in school she participated in fund-raising campaigns in behalf of Biafra and spoke to church groups and school groups and appeared on television in behalf of the Biafran cause. She alleges that these activities are known to the present government in control of Nigeria and that if she returns she will be subject to persecution in that, as an Ibo who supported the Biafran revolt, she may be jailed as other Biafran supporters have been, she will be unable to obtain employment, will be denied medical aid, be not permitted to live in any large city, and forced to live in the "bush." She also alleges that the bank accounts of all Ibos have been frozen and that Ibos are forced to live in poverty. In support of these allegations, she has presented letters from relatives and friends claiming to have a knowledge of conditions in Nigeria.

The civil war in Nigeria ended in January 1970 and Biafra is again within the folds of the recognized Nigerian government. The State Department has advised that "In January, 1970, at the conclusion of the war, the Federal Military Government declared a general amnesty, invited Nigerians living abroad to return, and announced a policy of reconciliation and reintegration of Nigerians (mostly Ibos) who had supported the secession. This policy has the support of the State Governments as well. There has been

no evidence of mass arrests, trials, imprisonments, or executions; and there is ample evidence that the Federal Military Government is sincerely interested in bringing about successfully and equitably the reintegration of the Ibos. It is true that in certain parts of the country, particularly the South-Eastern and Rivers States, elements of the local population have in various ways made difficulties for Ibos or discouraged their return, but this trend is diminishing with the passage of time and is not unusual in a context of tribal antagonism and in the aftermath of a particularly bitter civil war. Since the end of the fighting, thousands of Ibos have traveled from their homeland to other parts of Nigeria. Former 'Biafra' officials and other Ibos, including some from this country, have traveled without hindrance between Nigeria and the United States. Thousands of Ibo police and some military personnel and former government officials have been reintegrated into their respective services. An Ibo now sits as Commissioner on the Federal Executive Council; the Ibo Administrator of the East-Central State has been appointed to the Supreme Military Council. These are the highest governing bodies of Nigeria. . . . . Nigeria faces an immense task of reconstruction. The effort requires the talents of those Nigerians who studied in the United States during the war. The Federal Military Government has urged those who remained abroad during hostilities to return to Nigeria in order to assist in the task of rebuilding and development which lies ahead. We feel that Nigerians who have completed their programs of study in the United States should return home."

The Nigerian Embassy, Washington, D.C., in its "Aide Memoire" of May 7, 1970, publicly announced its assurance of "Full rights and privileges for all Nigerian citizens, without discrimination, including the population in the areas formerly under rebel control, and those who supported the rebellion;" and states "From the time the civil war ended, therefore, no Nigerian abroad or at home had any further justification for perpetuating the conditions of the period of the civil war, or for claiming special treatment abroad on the grounds of a possible fear of disability or maltreatment in his country." and "All Nigerians who have acquired skills and useful training are urgently needed by their country in the current task of reconstruction and development at this most fateful period of the country's history. The Federal Government of Nigeria, and the Governments of the 12 states in the Federation, have repeatedly declared their genuine and urgent desire to welcome back all Nigerians abroad, including those

who previously supported the secession. Major-General Yakubu Gowon, Head of the Federal Military Government and Commander-in-Chief of Nigerian Armed Forces, has publicly and repeatedly called on all Nigerians abroad, especially those who have acquired training and expertise in various fields, to come home and participate in the current efforts of rebuilding the nation."

The State Department advised that there is no evidence that the hardships and sufferings of applicant's family and the Ibo people are the result of a deliberate Nigerian government policy. They are rather the consequence of the secession, blockade, and the military conflict that moved across much of the southeastern part of Nigeria during the Biafran revolt. The suffering caused by the civil war is not limited to the Ibo's. Ethnic groups from both sides, Nigerian and Biafran, were caught up in the strife and suffered deprivation, financial ruin and various degrees of starvation.

The State Department reports and those of other independent sources, including the press, contain no evidence of government persecution of former supporters of the Biafra regime. There have been no mass arrests, no war crimes trials, no executions. There have been no verified reports that Nigerians on returning to Nigeria have been jailed or persecuted because they supported the Biafran regime during the civil war.

It is true that the bank accounts of the former secessionist area had been frozen but in January 1971 all bank accounts in the former secessionist area were unfrozen, the only limitation being that those accounts showing a net increase during the war were limited to the level at which they had been on the date of secession. This was consistent with the Nigerian government's earlier decision not to exchange Biafran currency for Nigerian pounds primarily because the Biafran currency had been badly inflated.

Medicinal supplies are erratic, scarce, and even nonexistent in many parts of Nigeria, not alone in the East-Central State. It is quite possible that supplies in the former secessionist area have not yet been restored to prewar levels but there is no government policy of denying drugs and medicines to the people.

The applicant's allegation that the Nigerian government is deliberately keeping the Ibo people in a state of poverty is not supported. The suffering of the Ibo people is largely the result of the ruin and destruction of war. The Nigerian Government is trying to complete the reconstruction of the area, get the economy going, and move on to new development. A lot of progress has been made in the past twelve months and much remains to be done.

Complete recovery from the adverse effects of the war cannot be expected to be completed in a short time.

While it is true that the applicant may not be able to command the same salary as she does in the United States, consideration must be given to the fact that Nigeria is still an underdeveloped country where the per capita income is less than $100.00 a year and the standard of living is not on a par with United States standards. Ibos are not restricted in the East-Central or Biafra area. They are moving in increasing numbers to other parts of Nigeria, even though they may be less welcome in the Port Harcourt area where, before the civil war, Ibos were predominant and the minority groups in that area were not supporters of the secession. The applicant should consider the fact that she will be able to make a greater contribution to the future development of Nigeria by practicing her profession as a nutritionist in her homeland than by staying in the United States. After all, she originally came to the United States as an exchange alien for the purpose of gaining knowledge which she could later use for the betterment of herself and her country.

The announced purpose of the Cultural Exchange Act is to afford aliens an opportunity to visit the United States and acquire skills that would be useful in their homelands. To the extent that a visiting exchangee does not return to his native land, a major policy of the Act is undercut. Congress sought to secure its objectives by adopting the requirements of section 212(e) of the Immigration and Nationality Act, as amended.

Considering all the factors discussed, we find that the applicant has not established that if she returned to Nigeria, the country of her nationality and last residence, that she would in fact be subject to persecution on account of race, religion, or political opinion. No evidence has been presented on appeal that would warrant a change from the decision of the District Director.

The *Matter of Brantigan,* 11 I. & N. Dec. 493, holds that burden of proof to establish eligibility for a desired benefit rests with the petitioner (applicant). That burden has not been met. The applicant has failed to establish that she is eligible for the relief she seeks. The appeal will be dismissed.

**ORDER:** It is ordered that the appeal be dismissed.